# Exhibit A

FISH.
FISH & RICHARDSON

Fish & Richardson P.C.
1000 Maine Avenue, SW
Suite 1000
Washington, DC 20024

202 783 5070 main
202 783 2331 fax

Michael J. McKeon
Principal
mckeon@fr.com
202 626 6448 direct

DOCKET NUMBER 3413
Office of the Secretary Int'l Trade Commission

**VIA HAND DELIVERY**

September 26, 2019

The Honorable Lisa R. Barton
Secretary
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Lithium-Ion Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-___

Dear Secretary Barton:

Enclosed for filing on behalf of LG Chem, Ltd. ("LGC"), LG Chem Michigan Inc. ("LGCMI"), and Toray Industries, Inc. ("Toray") (collectively, "Complainants"), are the following documents in support of Complainants' request that the Commission commence an investigation pursuant to the provisions of Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337. Please note that Confidential Exhibits 16C-17C, 25C-36C, and 38C-41C to the Complaint contain Confidential Business Information and pursuant to the Commission's Rules of Practice and Procedure, a request for confidential treatment of the information in those exhibits accompanies this filing. Accordingly, Complainant submits the following:

1. One original and eight (8) paper copies of Complainant's Verified Complaint and Public Interest Statement (original unbound) and one (1) CD of the Non-Confidential Exhibits, and one (1) CD of the Confidential Exhibits (19 C.F.R. §§ 201.6(c), 210.4(f)(2), 210.8(a)(l)(i) and 201.8(b));

2. Two (2) additional copies of the Non-Confidential Verified Complaint, Public Interest Statement, and two (2) CDs of the Non-Confidential Exhibits for service upon each proposed respondent (19 C.F.R. §§ 210.8(a)(l)(iii) and 210.11(a));

3. Two (2) additional copies of the Confidential Exhibits on CDs, one for each proposed respondent (19 C.F.R. §§ 210.8(a)(l)(iii) and 210.11(a));

4. One (1) additional copy of the Non-Confidential Verified Complaint for service upon the Embassy of the Republic of Korea (19 C.F.R. §§ 210.8(a)(l)(iv) and 210.11(a)(l)(ii));

5. One (1) certified copy of the asserted United States Patent: U.S. Patent No. 7,662,517 (the "'517 Patent"), identified as Exhibit 1 in the Complaint;

FISH.
FISH & RICHARDSON

6. One (1) certified copy of the asserted United States Patent: U.S. Patent No. 7,638,241 (the "'241 Patent"), identified as Exhibit 2 in the Complaint;

7. One (1) certified copy of the asserted United States Patent: U.S. Patent No. 7,709,152 (the "'152 Patent"), identified as Exhibit 3 in the Complaint;

8. One (1) certified copy of the asserted United States Patent: U.S. Patent No. 7,771,877 (the "'877 Patent"), identified as Exhibit 4 in the Complaint;

9. One (1) certified copy of the assignment records for the '517 patent, '241 patent, '152 patent, and '877 patent, identified as Exhibit 5 in the Complaint (19 C.F.R. §§ 210.12(a)(9)(2));

10. One (1) certified copy of the prosecution histories for the '517 patent, '241 patent, '152 patent, and '877 patent, identified as Appendices A, C, E, and G in the Complaint, and three (3) additional copies of each on separate CDs (19 C.F.R. §§ 210.12(c)(l));

11. Four (4) copies of examiner-cited references identified in the prosecution histories of the asserted patents, identified as Appendices B, D, F, and H in the Complaint (19 C.F.R. §§ 210.12(c)(2)); and

12. A letter and certification pursuant to 19 C.F.R. §§ 201.6(b) and 210.5(d) requesting confidential treatment of information appearing in Confidential Exhibits 16C-17C, 25C-36C, and 38C-41C to the Verified Complaint.

If you have any questions, please do not hesitate to contact me with any questions or concerns.

Respectfully submitted,

Michael J. McKeon

*Counsel for LG Chem, Ltd., LG Chem Michigan Inc., and Toray Industries, Inc.*

FISH.
FISH & RICHARDSON

Fish & Richardson P.C.
1000 Maine Avenue, SW
Suite 1000
Washington, DC 20024

202 783 5070 main
202 783 2331 fax

**Michael J. McKeon**
Principal
mckeon@fr.com
202 626 6448 direct

**VIA HAND DELIVERY**

September 26, 2019

The Honorable Lisa R. Barton
Secretary
U.S. International Trade Commission
500 E Street, S.W.
Washington, D.C. 20436

Re: *Certain Lithium-Ion Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-__

Dear Secretary Barton:

In accordance with 19 C.F.R. §§ 201.8(g) and 210.5, LG Chem, Ltd. ("LGC"), LG Chem Michigan Inc. ("LGCMI"), and Toray Industries, Inc. ("Toray") (collectively, "Complainants") request confidential treatment for the business information contained in Confidential Exhibits 16C-17C, 25C-36C, and 38C-41C to the Verified Complaint.

The information for which confidential treatment is sought is proprietary commercial information not otherwise publicly available. Specifically, Confidential Exhibits 16C-17C contain confidential banking and agreement details with respect to the purchase of a vehicle containing an accused product; Confidential Exhibits 25C-29C, 31C-35C, and C38-41C contain detailed proprietary information regarding Complainants' domestic industry relating to its products and commercial operations; and Confidential Exhibits 30C and 36C contain confidential information relating to financial and licensing information of Complainants.

The information described above qualifies as confidential business information pursuant to Rule 201.6(a) because:

1. It is not publicly available;

2. Unauthorized disclosure of such information could cause substantial harm to the competitive position of Complainants; and

3. The disclosure of such information could impair the Commission's ability to obtain information necessary to perform it statutory function.

If you have any questions, please do not hesitate to contact me with any questions or concerns.

Respectfully submitted,

Michael J. McKeon

*Counsel for LG Chem, Ltd., LG Chem Michigan Inc., and Toray Industries, Inc.*

# CERTIFICATION

I, Michael J. McKeon, counsel for LG Chem, Ltd., LG Chem Michigan Inc., and Toray Industries, Inc. (collectively, "Complainants"), declare:

1. I am duly authorized by Complainants to execute this certification.

2. I have reviewed the Complaint and Confidential Exhibits 16C-17C, 25C-36C, and 38C-41C for which confidential treatment has been requested.

3. To the best of my knowledge, information, and belief, founded after reasonable inquiry, substantially identical information is not available to the public.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that the statement made upon information and belief are believed by me to be true.

Executed this 26th day of September 2019.

Michael J. McKeon

*Counsel for LG Chem, Ltd., LG Chem Michigan Inc., and Toray Industries, Inc.*

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C. 20436**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN LITHIUM-ION BATTERY CELLS, BATTERY MODULES, BATTERY PACKS, COMPONENTS THEREOF, AND PRODUCTS CONTAINING THE SAME** | Investigation No. 337-TA-____ |

## COMPLAINANTS' STATEMENT ON THE PUBLIC INTEREST

Pursuant to U.S. International Trade Commission ("Commission") Rule 210.8(b), 19 C.F.R. § 210.8(b), Complainants LG Chem, Ltd., LG Chem Michigan, Inc., and Toray Industries Inc. (collectively, "Complainants") respectfully submit this Statement on the Public Interest concurrently with the above-captioned Complaint.

The accused products at issue in the Complaint are lithium-ion battery cells, battery modules, battery packs, components thereof (including but not limited to battery separators and powderous electrode active material), and products containing the same. Complainants are seeking relief from the Commission against SK Innovation Co., Ltd. ("SKI") and SK Battery America, Inc. ("SKBA") (collectively, "the Respondents"). Specifically, Complainants seek a limited exclusion order and cease-and-desist orders covering the accused lithium-ion battery cells, battery modules, battery packs, components thereof, and products containing the same. As set forth in more detail herein, issuance of the relief requested will not adversely affect the public health, safety, or welfare conditions in the U.S., competitive conditions in the U.S. economy, the production of like or directly competitive articles in the U.S., or U.S. consumers. Thus, this Investigation does not present an instance where the Commission, the parties, and the public should be required to undergo the time and expense of discovery and trial for a Recommended

Determination by the ALJ regarding the public interest.

## I. THE REQUESTED REMEDIAL ORDERS ARE IN ACCORD WITH THE PUBLIC INTEREST

The Commission has long recognized that there is a strong public interest in protecting intellectual property rights. *Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chip, Power Control Chips*, Inv. No. 337-TA-543, USITC Pub. 4258 (Oct. 2011). The requested remedial orders here are in accord with the public interest for at least the following reasons: (1) exclusion of the accused devices and products will not have an adverse effect on the public health or welfare as those issues are defined by the Commission; (2) only a relatively small subset of the industry selling or offering for sale lithium-ion battery cells, battery modules, battery packs, components thereof, and products containing the same in the U.S. would be barred; and (3) Complainants and third parties are readily available to fill any void in the market caused by the requested remedial orders within a commercially reasonable amount of time. As such, the public interest in protecting Complainants' intellectual property rights outweighs any potentially adverse impact on the public.

### A. Use of Articles Potentially Subject to the Remedial Orders in the U.S.

The accused products at issue in this Investigation are lithium-ion battery cells, battery modules, battery packs, components thereof (including but not limited to battery separators and powderous electrode active material), and products containing the same. Such batteries are used in the automotive industry for hybrid and electric vehicles as well as in portable consumer electronics. Batteries containing LG Chem's battery technology are present in various consumer electronics currently available in the U.S., as well as electric and hybrid vehicles such as General Motors's Chevrolet Volt and Fiat Chrysler's Pacifica. The accused devices are found in a variety of battery-powered articles such as electric vehicles. Specific instances of products that include

the accused battery technology include, but are not limited to, an exemplary SKI battery labeled "E600," "S66008CVPBL01595" used in a 2019 Kia Niro EV.

**B. There Are No Public Health, Safety, or Welfare Concerns in the U.S. Relating to the Requested Remedial Orders**

The requested remedial orders will not give rise to any public health, safety, or welfare concerns in the U.S. The accused products are battery-related products including batteries for electric vehicles, and are not like medical products that have raised concerns by the Commission about public health, safety, or welfare. *See, e.g., Certain Fluidized Supporting Apparatus & Components Thereof*, Inv. No. 337-182/188, USITC Publ. No. 1668, Comm'n Op. at 23-25 (October 1984) (finding that access to medical equipment implicates the public interest). Indeed, the Commission has rejected arguments that the public interest in "clean energy R&D" creates a per se bar to issuing remedial orders. *Certain Lithium Metal Oxide Cathode Materials, Lithium-Ion Batteries for Power Tool Prods. Containing Same, & Power Tool Prods. with Lithium-Ion Batteries Containing Same*, Inv. No. 337-TA-951, Comm'n Op. (Pub. Version) at 29, 47-53 (U.S.I.T.C. Jan. 26, 2017). Furthermore, Respondents' accused products represent a small portion of the battery marketplace, and other manufacturers—including LG Chem itself, its subsidiaries, and its licensees—have the capacity to replace the volume of accused products.

**C. LGC, Its Licensees, and Third Parties Make Like or Directly Competitive Articles Which Could Replace the Subject Articles If They Were Excluded**

LG Chem and third parties make like and directly competitive articles that would replace Respondents' products if they were excluded from the U.S. LG Chem has been a manufacturer of lithium-ion batteries since 1999, and since then has continued to increase its sales volume in the battery market based on its competitive technologies and innovative product development.

There are many sophisticated companies capable of providing alternative batteries,

including Panasonic, Samsung SDI, and others. In their public interest statement submitted in the institution stage of ITC Docket Number 3411, which involves similar EV batteries, Respondents agree that third parties are able to replace any excluded EV batteries. Furthermore, Respondents are relative newcomers to the EV battery product market in the U.S. and represent a small percentage of overall global EV battery production, accounting for less than 2% of the global market for EV batteries,[1] and as of 2017, approximately 2% of the U.S. installed base.[2]

### D. Complainants and/or Third Parties Will Be in a Position To Replace the Volume of Articles Subject to the Requested Remedial Orders in a Commercially Reasonable Time in the U.S.

LG Chem enjoys a leadership position in the world's manufacturing of lithium-ion batteries. In addition to its manufacturing facility in Holland, Michigan, LG Chem has numerous other manufacturing facilities around the world, several of which already manufacture lithium-ion batteries. Furthermore, as discussed above, the U.S. market for lithium-ion batteries includes other sophisticated companies that could easily replace any articles excluded by LG Chem's requested remedial orders. Given Respondents' relatively small share of the U.S. market for lithium-ion batteries, LG Chem and third parties will be in a position to replace the volume of infringing articles in a commercially reasonable time.

### E. The Requested Remedial Orders Will Not Adversely Impact U.S. Consumers

The issuance of the requested remedial orders will not have an adverse impact on U.S. consumers. As noted above, the potentially excluded products comprise only a small portion of

---

[1] Heekyong Yang, "*EV battery Maker LG Chem Sues SK Innovation, Alleges Trade Secret Theft*," REUTERS (April 30, 2019), *available at* https://www.reuters.com/article/us-lg-chem-sk-innovation-lawsuit/ev-battery-maker-lg-chem-sues-sk-innovation-alleges-trade-secret-theft-idUSKCN1S60H9.

[2] D. Coffin & J. Horowitz, *The Supply Chain for Electric Vehicle Batteries*, J. OF INT'L COMMERCE & ECONOMICS at 11 (U.S.I.T.C., Dec. 2018), *available at* https://www.usitc.gov/publications/332/journals/the_supply_chain_for_electric_vehicle_batteries.pdf.

the U.S. market for lithium-ion battery products, and LG Chem and third parties are capable of meeting U.S. market demand in the event of exclusion, making it unlikely that consumers would experience any supply-related impact if the orders should issue.

Further, even if the remedial orders caused a slight increase in the price of lithium-ion batteries, such a price increase alone would be insufficient to warrant preclusion of a remedial order. *See Certain Lens-Fitted Film Packages*, Inv. No. 337-TA-406, Comm'n Op. (U.S.I.T.C. June 28, 1999) (finding that some price increase does not outweigh the public interest in protecting intellectual property rights). Given that there would be no unfilled void in the marketplace because substitute batteries could replace the volume of the excluded articles, any impact to the public interest by the exclusion of the infringing SKI products would be minimal.

## II. CONCLUSION

The requested remedial orders will provide effective relief in the face of ongoing and open patent infringement in the U.S. by Respondents. Protecting Complainants' intellectual property rights and associated domestic industry in the U.S. through the requested remedial orders will accordingly serve the public interest while having little or no adverse effect on the public interest. For these reasons, there is no need to divert public, private, and Commission resources for an ALJ Recommended Determination on the Public Interest.

Dated: September 26, 2019

Michael J. McKeon
FISH & RICHARDSON P.C.
1000 Maine Ave., SW, Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C. 20436**

| In the Matter of<br><br>**CERTAIN LITHIUM-ION BATTERY CELLS, BATTERY MODULES, BATTERY PACKS, COMPONENTS THEREOF, AND PRODUCTS CONTAINING THE SAME** | Investigation No. 337-TA-____ |
|---|---|

**VERIFIED COMPLAINT OF LG CHEM, LTD., LG CHEM MICHIGAN INC., AND TORAY INDUSTRIES, INC. UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED**

**COMPLAINANTS:**

LG Chem, Ltd.
LG Twin Towers
128 Yeoui-daero, Yeongdeungpo-gu
Seoul 07336, South Korea
Telephone: +82-2-3773-1114

LG Chem Michigan Inc.
1 LG Way
Holland, MI 49423
Telephone: (616) 494-7190

Toray Industries, Inc.
Nihonbashi Mitsui Tower
1-1, Nihonbashi-Muromachi
2-chome, Chuo-ku
Tokyo, Japan
Telephone: +81-3-3245-5111

**PROPOSED RESPONDENTS:**

SK Innovation Co., Ltd.
26 Jongno
Jongno-gu
Seoul, South Korea
Telephone: +82-2-2121-5114

SK Battery America, Inc.
201 17th Street NW, Suite 1700
Atlanta, GA 30363
Telephone: (404) 923-1254

**COUNSEL FOR COMPLAINANTS:**

Michael J. McKeon
Lauren A. Degnan
Timothy W. Riffe
Ralph A. Phillips
Daniel A. Tishman
Thomas S. Fusco
**FISH & RICHARDSON P.C.**
1000 Maine Avenue
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Leeron G. Kalay
**FISH & RICHARDSON P.C.**
500 Arguello St., Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

**TABLE OF CONTENTS**

LIST OF EXHIBITS ..... iv
LIST OF APPENDICES ..... vi
I. INTRODUCTION ..... 1
II. COMPLAINANTS ..... 5
III. PROPOSED RESPONDENTS ..... 6
IV. THE TECHNOLOGY AND PRODUCTS AT ISSUE ..... 7
V. THE ASSERTED PATENTS ..... 8
A. The '517 Patent ..... 8
1. Identification of the Patent and Ownership ..... 8
2. Non-Technical Description of the Patented Invention ..... 9
3. Foreign Counterparts to the '517 Patent ..... 10
B. The '241 Patent ..... 11
1. Identification of the Patent and Ownership ..... 11
2. Non-Technical Description of the Patented Invention ..... 12
3. Foreign Counterparts to the '241 Patent ..... 13
C. The '152 Patent ..... 13
1. Identification of the Patent and Ownership ..... 13
2. Non-Technical Description of the Patented Invention ..... 14
3. Foreign Counterparts to the '152 Patent ..... 15
D. The '877 Patent ..... 15
1. Identification of the Patent and Ownership ..... 15
2. Non-Technical Description of the Patented Invention ..... 16
3. Foreign Counterparts to the '877 Patent ..... 17
VI. UNFAIR ACTS OF PROPOSED RESPONDENTS ..... 17
VII. SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE ..... 19
VIII. CLASSIFICATION UNDER THE HARMONIZED TARIFF SCHEDULE ..... 21
IX. LICENSEES ..... 21
X. DOMESTIC INDUSTRY ..... 22
A. Technical Prong ..... 22
B. Economic Prong ..... 23
XI. RELATED LITIGATION ..... 24
XII. REQUESTED RELIEF ..... 26

## LIST OF EXHIBITS

| # | Description |
|---|---|
| 1. | Certified Copy of U.S. Patent No. 7,662,517 ("the '517 patent") |
| 2. | Certified Copy of U.S. Patent No. 7,638,241 ("the '241 patent") |
| 3. | Certified Copy of U.S. Patent No. 7,709,152 ("the '152 patent") |
| 4. | Certified Copy of U.S. Patent No. 7,771,877 ("the '877 patent") |
| 5. | Certified Assignment Records of the '517, '241, '152, and '877 patents ('517, 241, and 152 patents: Reel/Frames – 021257/0011; 020465/0308; 042445/0809; 037276/0620; and 019423/0111; '877 patent: Reel/Frame – 018042/0077) |
| 6. | SK Innovation Consolidated Financial Statements (Mar. 31, 2019) |
| 7. | SK Innovation Co., Ltd., OneStop Report (Aug. 21, 2019) |
| 8. | SK Innovation Company Profile, Reuters |
| 9. | SK Innovation Battery Website, SKInnovation.com |
| 10. | Exemplary Claim Chart: SKI's Infringement of the '517 Patent |
| 11. | Exemplary Claim Chart: SKI's Infringement of the '241 Patent |
| 12. | Exemplary Claim Chart: SKI's Infringement of the '152 Patent |
| 13. | Exemplary Claim Chart: SKI's Infringement of the '877 Patent |
| 14. | 2019 Kia Niro EV: first drive of 239-mile electric Crossover, Green Car Reports (Feb. 4, 2019) |
| 15. | All New 2019 Kia Niro EV Crossover Utility Makes North American Debut (Nov. 28, 2018) |
| 16. | **CONFIDENTIAL:** 2019 Kia Niro EV Purchase Documents |
| 17. | **CONFIDENTIAL:** 2019 Kia Niro EV Purchase Photographs |
| 18. | 2019 Kia Niro EV EX for Sale in Rockville, Maryland, Herson's Kia |
| 19. | 2019 Kia Niro EV EX Window Sticker |
| 20. | 2019 Kia Niro EV crossover utility makes North American debut at LA Auto Show, Green Car Congress (Nov. 29, 2018) |
| 21. | 2018 LA Auto Show: 10 Biggest Electric Car Debuts, U.S. News (Nov. 29, 2018) |
| 22. | SK Innovation Importation Records, Panjiva.com |
| 23. | SK Innovation Unit to Expand Lithium-ion Battery Separator Output This Year, Koreabizwire.com (July 24, 2019) |
| 24. | Lithium-ion Battery Separator Plant in Korea, Globaltenders.com |
| 25. | **CONFIDENTIAL:** Declaration of Mr. Jaewook Jung Regarding Domestic Industry |
| 26. | **CONFIDENTIAL:** Exemplary Claim Chart: LGC's Practice of the '517 patent |
| 27. | **CONFIDENTIAL:** Exemplary Claim Chart: LGC's Practice of the '241 patent |
| 28. | **CONFIDENTIAL:** Exemplary Claim Chart: LGC's Practice of the '152 patent |
| 29. | **CONFIDENTIAL:** Exemplary Claim Chart: LGC's Practice of the '877 patent |
| 30. | **CONFIDENTIAL:** Patent Agreements between LGC and Toray |
| 31. | **CONFIDENTIAL:** SRS Recipe for LGC P2.7 Cell |
| 32. | **CONFIDENTIAL:** Separator Specifications for LGC P2.7 Cell |
| 33. | **CONFIDENTIAL:** Cell Specifications for LGC A7 Cell |
| 34. | **CONFIDENTIAL:** Operation Standard for Separator for LGC A7 Cell |
| 35. | **CONFIDENTIAL:** Separator Specifications for LGC A7 Cell |
| 36. | **CONFIDENTIAL:** List of Licensees |

| | |
|---|---|
| 37. | EcoPro BM Brochure |
| 38. | **CONFIDENTIAL:** LGC P2.7 Cell Specifications |
| 39. | **CONFIDENTIAL:** Cathode Material Supply Specifications |
| 40. | **CONFIDENTIAL:** Cathode Material Supply Specification |
| 41. | **CONFIDENTIAL:** Cathode Specifications for LGC P2.7 Cell |
| 42. | Hong Sun and Kejie Zhao, Electronic Structure and Comparative Properties of $LiNi_xMn_yCo_zO_2$ Cathode Materials, J. Phys. Chem. 232, 6002 (2017) |
| 43. | Jung Hyeonjung, South Korean Battery Industry Lacks Foundation for Battery Materials, Etnews/KoreaIT News (July 10, 2019) |
| 44. | Details for SK Battery America, Notice of Incorporation, Gwinnett Daily Post |

## LIST OF APPENDICES

| # | Description |
|---|---|
| A | Certified copy of file wrapper for '517 patent |
| B | References Mentioned in the Prosecution History of the '517 patent |
| C | Certified copy of file wrapper for '241 patent |
| D | References Mentioned in the Prosecution History of the '241 patent |
| E | Certified copy of file wrapper for '152 patent |
| F | References Mentioned in the Prosecution History of the '152 patent |
| G | Certified copy of file wrapper for '877 patent |
| H | References Mentioned in the Prosecution History of the '877 patent |

# I. INTRODUCTION

1. Complainants LG Chem, Ltd. ("LGC"), LG Chem Michigan Inc. ("LGCMI"), and Toray Industries, Inc. ("Toray") (collectively, "Complainants") request that the United States International Trade Commission commence an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), to remedy the unlawful importation into the United States, sale for importation into the United States, and/or sale within the United States after importation, of certain lithium-ion battery cells, battery modules, battery packs, components thereof, and products containing the same (collectively referred to as "Accused Products") that infringe valid and enforceable United States patents owned by Complainants.

2. The proposed Respondents are SK Innovation Co., Ltd. ("SKI") and SK Battery America, Inc. ("SKBA") (collectively, "Respondents"). Respondents have engaged in unfair acts in violation of Section 337 through and in connection with the unlicensed importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of accused products that infringe one or more claims of United States Patent No. 7,662,517 ("the '517 patent"), United States Patent No. 7,638,241 ("the '241 patent"), United States Patent No. 7,709,152 ("the '152 patent"), and United States Patent No. 7,771,877 ("the '877 patent"). The '517, '241, '152, and '877 patents are collectively referred to herein as "the Asserted Patents."

3. Complainants assert that Respondents directly infringe, contributorily infringe, and/or induce the infringement of at least the following claims of the Asserted Patents (collectively, "the Asserted Claims") with independent claims in bold:

| Patent | Asserted Claims |
|---|---|
| 7,662,517 | **1**, 2, 5-15, 18 |
| 7,638,241 | **1**-5, 9-12, 14-29, **30**, 31, 33-36 |
| 7,709,152 | **1**-13, 16-20 |
| 7,771,877 | **1**-4, **5**-7, 18, 20-21, 23-26 |

4. Certified copies of the Asserted Patents accompany this Complaint as Exhibits 1 to 4. Certified copies of the prosecution histories of the Asserted Patents and references cited therein accompany this Complaint as Appendices A-H. Certified assignment records for the Asserted Patents accompany this Complaint as Exhibit 5.

5. As required by Section 337(a)(2) and defined by Section 337(a)(3), an industry in the United States exists relating to articles protected by the Asserted Patents.

6. Complainants seek a permanent limited exclusion order, pursuant to Section 337(d), excluding from entry into the United States all of Respondents' Accused Products that infringe one or more claims of the Asserted Patents. Complainants also seek permanent cease and desist orders, pursuant to Section 337(f), directing Respondents to cease and desist from activities including, but not limited to, importing, marketing, advertising, demonstrating, warehousing inventory for distribution, offering for sale, selling, distributing, or using such Accused Products in the United States. Complainants also seek the imposition of a bond if Respondents continue to import infringing articles during the 60-day Presidential review period, pursuant to 19 U.S.C. § 1337(j).

7. For roughly 70 years since its founding in 1947, LGC has established itself as one of the most respected chemical companies in the world, relentlessly pursuing the enhancement of the quality of life through continuous technological development and breakthrough innovations. More recently, LGC is known as one of the world's largest and most innovative producers of lithium-ion batteries. Its lithium-ion batteries are widely recognized as being among the most

compact, lightweight, efficient, and safe. Not surprisingly, LGC retains numerous intellectual property rights covering chemical, mechanical, and electrical technologies, and much more, relating to lithium-ion battery technology.

8. Lithium-ion batteries have become an omnipresent fixture of modern life, powering nearly every mobile phone on the planet, providing municipal power grids with a reliable source of long duration grid storage, and ever-increasing proliferation in motor vehicles.

9. Among LGC's numerous lithium-ion battery innovations is its patented Safety Reinforced Separator ("SRS") technology. A critical component of the battery system, referred to as a separator, allows ion flow through the separator while safely enabling the exchange of lithium ions from one side of the battery to the other:




LGC's SRS technology offers superior safety through the improvement of the mechanical strength and heat resistance of batteries by applying a ceramic coating to the battery's separator layer, thereby enhancing robustness and safety by reducing the potential for short circuits.

10. In addition, LGC's patented cathode active material powder with size dependent composition offers superior performance and safety by combining high energy density with high cycling stability and safety at a low cost.

11. As a result of LGC's SRS, cathode materials, and other innovations, LGC's lithium-ion batteries have enjoyed industry-leading success in the marketplace.

12. Complainants have substantial operations in the United States, including with respect to the Asserted Patents. For example, Complainant LGCMI has research and development, testing and engineering, manufacturing, sales and marketing, and business offices in Holland, MI, where it has invested hundreds of millions of dollars and employs hundreds of skilled workers, and Troy, MI, where it has invested tens of millions of dollars and employs hundreds of skilled workers. Through their facilities in Michigan, Complainants supply millions of battery cells each year to automotive manufacturers including General Motors, Fiat-Chrysler, and Ford. Given the increasing demand for safe, high-performance lithium-ion batteries in the U.S. marketplace, especially in the automotive industry, Complainants continue to re-engineer their manufacturing facilities in Michigan, adding product development space, hundreds of jobs, and hundreds of millions of dollars to the local economy.

13. The '517, '241, and '152 patents were originally assigned to LGC. In April 2017, LGC executed a deed of assignment through which it conveyed certain rights to—and received certain rights from—Toray. *See* Exhibit 5; Confidential Exhibit 30. The '877 patent is wholly-owned by LGC. *Id.*

14. Complainants have made and continue to make significant investment in the design, development, and production of products protected by the Asserted Patents. In the United States, Complainants exploit the technology covered by the Asserted Patents through various activities, including research and development, engineering, manufacturing, and sales, as discussed more fully below. Along with this exploitation of these technologies, Complainants have made significant investments in the United States in facilities, equipment, labor, capital,

and research and development as detailed, *infra*. As set forth in more detail herein, Complainants have invested hundreds of millions of dollars in their domestic operations devoted to articles protected by the Asserted Patents. In addition, Complainants employ hundreds of skilled workers in Michigan.

## II. COMPLAINANTS

15. LGC is a corporation organized under the laws of South Korea, having a principal place of business at 128 Yeoui-daero, Yeongdeungpo-gu, Seoul 07336, South Korea. LGC is a global leader in broad-ranging chemical, material, and energy technologies, including the development, manufacture, and support of state-of-the-art lithium-ion batteries that are widely used in various electronic and automotive applications around the world.

16. LGCMI is a wholly-owned subsidiary of LGC, existing under the laws of the State of Delaware with its principal place of business at 1 LG Way, Holland, MI 49423. LGCMI develops and manufactures lithium-ion batteries at its facilities in Michigan (pictured below), including individual battery cells as well as fully-assembled battery packs for consumer applications.



17. Toray is a corporation organized under the laws of Japan with its principal place of business at Nihonbashi Mitsui Tower 1-1, Nihonbashi-Muromachi 2-chome, Chuo-ku Tokyo, Japan. Toray is a global leader in the integrated chemical industry.

## III. PROPOSED RESPONDENTS

18. SKI is a South Korean company having a principal place of business at SK Building, 26 Jong-ro, Jongno-gu 03188, Seoul, South Korea. *See* Exhibit 6. On information and belief, SKI operates primarily as a holding company principally engaged in the manufacture and distribution of petroleum products. Additionally, SKI, through its numerous subsidiaries, mainly operates its business through five segments—Petroleum, Petrochemicals, Lubricants, Batteries, and Others. Exhibit 7; *see also* Exhibit 8. According to its website, SKI is a global company "seeking new business opportunities with global automakers for further penetration into the global electric vehicle battery market." Exhibit 9.

19. On information and belief, SKBA is a wholly-owned subsidiary of SKI and is a corporation organized under the laws of Delaware with a principal place of business at 201 17th Street NW, Suite 1700, Atlanta, GA, 30363. *See* Exhibit 6. On further information and belief, SKBA also maintains an office at 289 South Culver Street, Lawrenceville, GA, 30046. *See* Exhibit 44. On information and belief, SKBA focuses primarily on the research, development, manufacturing, and sale of battery technology in the United States. EDIS Doc. No. 679282, *Certain Lithium-Ion Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Production and Testing Sys. and Processes Therefor*, 337-TA-1159, Answer, ¶ 25.

20. On information and belief, Respondents design, develop, manufacture, sell for importation, import into the United States, and/or sell after importation into the United States lithium-ion batteries and products containing lithium-ion batteries, as further described below.

## IV. THE TECHNOLOGY AND PRODUCTS AT ISSUE

21. Pursuant to 19 C.F.R. §§ 210.10(b)(1) and 210.12(a)(12), the Accused Products are certain lithium-ion battery cells, battery modules, battery packs, components thereof (including but not limited to battery separators and powderous electrode active material), and products containing the same. These Accused Products, without permission, implement LGC's technologies as described and claimed in the Asserted Patents.

22. A non-limiting example of an Accused Product is an SKI battery labeled "E600," "S66008CVPBL01595" used in a 2019 Kia Niro EV. *See* Exhibits 10-13. This identification of an exemplary model is intended for illustration and is not intended to limit the scope of the investigation. Further discovery is expected to reveal additional infringing products. Any remedy should extend to all present and future infringing products of Respondents regardless of model number or type of product.

23. The technology at issue relates generally to lithium-ion batteries that include separators and cathode materials.

24. Batteries are electrochemical devices that store energy electrochemically—that is, they convert chemical energy into electricity that may then be used as a source of power. At a minimum, a battery includes a positive electrode (*i.e.*, cathode), a negative electrode (*i.e.*, anode), a separator, and an electrolyte. The separator provides a physical separation between the two electrodes, and the electrolyte enables the movement of ions between the electrodes. The basic electrochemical unit that contains the electrodes, separator, and electrolyte in a case such as an aluminum pouch is referred to as a "cell," and a collection of cells that are assembled for use is referred to as a "pack," a final battery product, or, in some cases, a "module," *e.g.*, for use in an electric vehicle. In consumer electronics applications such as smart phones, a battery pack as a final battery product may have a single cell along with a protection circuit PCB.

25. Lithium-ion batteries are charged and discharged through the movement of ions between the electrodes. During charging, lithium ions travel from the cathode, through the electrolyte, to the anode. Upon discharging, lithium ions travel back from the anode to the cathode. During this process, the separator provides an electrically insulating barrier between the cathode and the anode so as to prevent electrical short circuits, which can occur when the two electrodes make contact, while still allowing the ions to pass through. Polymer-based separators used in lithium-ion batteries additionally perform what can be described as a shutdown function. Through a melting process at high temperatures, the shutdown function halts the transport of ions. That is, the separator can effectively shut down the cell to prevent a dangerous failure condition, such as fire or explosion. LGC's SRS technology further improves the safety of lithium-ion batteries as well as the quality of lithium-ion batteries by, among other things, providing a composite separator that includes a ceramic coating layer on a polymer base.

26. SKI has and continues to supply customers with its infringing batteries and components thereof from abroad to meet U.S. demand in an effort to increase its market share in the U.S. while infringing LGC's patents.

## V. THE ASSERTED PATENTS

### A. The '517 Patent

#### 1. Identification of the Patent and Ownership

27. U.S. Patent No. 7,662,517 ("the '517 patent") is entitled "Organic/Inorganic Composite Microporous Membrane and Electrochemical Device Prepared Thereby" and duly and legally issued on February 16, 2010. The '517 patent issued from U.S. Patent Application Serial No. 11/721,259 and claims priority to Korean patent applications KR 10-2004-0110400 and KR 10-2004-0110402, both filed on December 22, 2004. The '517 patent will expire May 26, 2026. The '517 patent is directed to the separator, which is an element within the lithium-ion

battery that is disposed between the cathode and the anode so as to prevent electrical short circuits.

28. At the time of issuance, LGC was the owner, by valid assignment, of the entire right, title, and interest in and to the '517 patent. Prior to issuance, the '517 inventors assigned all right, title, and interest in U.S. Patent Application Serial No. 11/721,259 to LGC. This assignment is recorded at the United States Patent and Trademark Office ("USPTO") at Reel/Frame 019423/0111. In April 2017, LGC executed a deed of assignment through which it conveyed certain rights to—and received certain rights from—Toray. *See* Exhibit 5; Confidential Exhibit 30. The '517 patent is valid, enforceable, and is currently in full force and effect.

29. Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by Appendices A and B containing: (i) a certified copy and three additional copies of the prosecution history of the '517 patent; and (ii) four copies of each reference mentioned in that prosecution history, respectively.

**2. Non-Technical Description of the Patented Invention**

30. The '517 patent relates to a composite, porous separator structure for lithium-ion batteries, electrochemical devices (*i.e.*, batteries) containing the same, and a method to manufacture such separators.[1] With reference to the exemplary embodiment of Fig. 1 (reproduced below), the composite separator includes (i) a polyolefin-based separator substrate and (ii) an active layer that is formed by coating the polyolefin-based separator substrate. The

[1] All non-technical descriptions of the patents herein are presented to give a general background of those inventions. Such statements are not intended to be used, nor should be used, for purposes of patent claim interpretation. Complainants present these statements subject to, and without waiver of, their right to argue that claim terms should be construed in a particular way, as contemplated by claim interpretation jurisprudence and the relevant evidence.

active layer is made up of an interconnected network of inorganic particles that are held together by a binder polymer and that form interstitial volumes among the particles to form a pore structure. The polyolefin layer can provide shutdown protection through a melting process, and the active layer made up of inorganic particles provides improved thermal and electrochemical safety. Because both the polyolefin-based separator substrate and the active layer include uniform pore structures, lithium ions can pass through more uniformly for improved electrochemical performance.

FIG. 1




**’517 Patent at Fig. 1**

### 3. Foreign Counterparts to the ’517 Patent

31. The following foreign patent(s) and/or patent application(s) correspond to the ’517 patent: WO2006068428, TWI311102, RU2364011, KR100775310, KR 10-2004-0110400, KR 10-2004-0110402, JP2014232730, JP2014082216, JP2013062257, JP5883762, JP2012169284, JP2012124183, JP2012140015, JP2012153897, JP2012167280, JP2012134177, JP2012146677, JP2012132023, JP5460962, EP2763211, EP2763210, EP2528142, EP2528141 (issued in AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HU, IE, IS, IT, LI, LT, LU, LV, MC, NL, PL, PT, RO, SE, SI, SK, TR), EP2528140, EP2528139, EP1829139 (issued in AT, BE, BG, CH, CY, CZ, DE, DK, EE, ES, FI, FR, GB, GR, HU, IE, IS, IT, LI, LT, LU,LV, MC, NL, PL, PT, RO, SE, SI, SK, TR), DE202005022139, DE202005022138,

DE202005021948, CN102646802, CN101088183, CA2591941, IN2122/KOLNP/2007, and BRPI0518118.

32. No other foreign patents or patent applications corresponding to the '517 patent have been filed, abandoned, withdrawn, or rejected.

### B. The '241 Patent

#### 1. Identification of the Patent and Ownership

33. U.S. Patent No. 7,638,241 ("the '241 patent") is entitled "Organic/Inorganic Composite Separator Having Morphology Gradient, Manufacturing Method Thereof and Electrochemical Device Containing the Same" and duly and legally issued on December 29, 2009. The '241 patent issued from U.S. Patent Application Serial No. 11/997,948 and claims priority to Korean patent application KR 10-2005-0118315 filed on December 6, 2005. The '241 patent will expire December 29, 2026. The '241 patent is directed to the separator, which is an element within the lithium-ion battery that is disposed between the cathode and the anode so as to prevent electrical short circuits.

34. At the time of issuance, LGC was the owner, by valid assignment, of the entire right, title, and interest in and to the '241 patent. Prior to issuance, the '241 inventors assigned all right, title, and interest in U.S. Patent Application Serial No. 11/997,948 to LGC. This assignment is recorded at the USPTO at Reel/Frame 020465/0308. In April 2017, LGC executed a deed of assignment through which it conveyed certain rights to—and received certain rights from—Toray. *See* Exhibit 5; Confidential Exhibit 30. The '241 patent is valid, enforceable, and is currently in full force and effect.

35. Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by Appendices C and D containing: (i) a certified copy and three

additional copies of the prosecution history of the '241 patent; and (ii) four copies of each reference mentioned in that prosecution history, respectively.

### 2. Non-Technical Description of the Patented Invention

36. The '241 patent relates to a composite, porous separator structure for lithium-ion batteries, electrochemical devices (*i.e.*, batteries) containing the same, and a method to manufacture such separators. With reference to Fig. 1 (reproduced below), the composite separator includes (i) a porous substrate and (ii) an active layer that coats the porous substrate. The active layer includes a mixture of inorganic particles and binder polymer. In order to prevent the inorganic particles in the porous active layer from becoming detached and the adhesion characteristics of the separator toward the electrodes from being deteriorated, the '241 patent teaches increasing the binder polymer content in the surface region of the porous active layer. That is, the binder polymer/inorganic particles ratio is higher at the surface region of the porous active layer than it is inside the layer, thereby providing improved adhesion properties in the upper regions of the active layer. The lower concentration of binder in the lower regions of the active layer helps maintain better ionic movement.




**'241 Patent at Fig. 1**

### 3. Foreign Counterparts to the '241 Patent

37. The following foreign patent(s) and/or patent application(s) correspond to the '241 patent: WO2007066967, TWI422090, RU2403653, KR100727247, KR 10-2005-0118315, JP5671208, EP1972017 (issued in DE, FI, FR, GB, IT, SE), CN101326658, CA2632364, IN5844/DELNP/2008, and BRPI0620590.

38. No other foreign patents or patent applications corresponding to the '241 patent have been filed, abandoned, withdrawn, or rejected.

## C. The '152 Patent

### 1. Identification of the Patent and Ownership

39. U.S. Patent No. 7,709,152 ("the '152 patent") is entitled "Organic/Inorganic Composite Separator Having Porous Active Coating Layer and Electrochemical Device Containing the Same" and duly and legally issued on May 4, 2010. The '152 patent issued from U.S. Patent Application Serial No. 12/158,934 and claims priority to Korean patent application KR 10-2007-0011818 filed on February 5, 2007. The '152 patent will expire February 5, 2028. The '152 patent is directed to the separator, which is an element within the lithium-ion battery that is disposed between the cathode and the anode so as to prevent electrical short circuits.

40. At the time of issuance, LGC was the owner, by valid assignment, of the entire right, title, and interest in and to the '152 patent. Prior to issuance, the '152 inventors assigned all right, title, and interest in U.S. Patent Application Serial No. 12/158,934. This assignment is recorded at the USPTO at Reel/Frame 021257/0011. In April 2017, LGC executed a deed of assignment through which it conveyed certain rights to—and received certain rights from—Toray. *See* Exhibit 5; Confidential Exhibit 30. The '152 patent is valid, enforceable, and is currently in full force and effect.

41. Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by Appendices E and F containing: (i) a certified copy and three additional copies of the prosecution history of the '152 patent; and (ii) four copies of each reference mentioned in that prosecution history, respectively.

### 2. Non-Technical Description of the Patented Invention

42. The '152 patent relates to a composite, porous separator structure for lithium-ion batteries, and electrochemical devices (*i.e.*, batteries) containing the same. In particular, the composite separator includes (i) a polyolefin substrate having pores and (ii) an active layer that coated on the polyolefin substrate. The active layer includes a mixture of inorganic particles and binder polymer. For improved safety and performance, the '152 patent specifies a minimum peeling force between the active layer and the polyolefin substrate as well as a maximum allowable thermal shrinkage of the separator. To this end, in one embodiment, a particular weight ratio of the inorganic particles and the binder polymer is specified. With reference to Fig. 2 (reproduced below), the '152 patent describes various specific testing conditions, such as the test setup for measuring peeling force shown in Fig. 2, that yielded the required values of peeling force and thermal shrinkage.



**'152 Patent at Fig. 2**

### 3. Foreign Counterparts to the '152 Patent

43. The following foreign patent(s) and/or patent application(s) correspond to the '152 patent: WO2008097013, TWI517483, TWI464937, TWI364864, RU2455734, KR100727248, JP6069677, JP5705682, JP4846849, EP2693527, EP2693526, EP2122714, DE202008018204, CN105118949, CN101542777, IN05149/CHENP/2009, and BRPI0806419.

44. No other foreign patents or patent applications corresponding to the '152 patent have been filed, abandoned, withdrawn, or rejected.

## D. The '877 Patent

### 1. Identification of the Patent and Ownership

45. U.S. Patent No. 7,771,877 ("the '877 patent") is entitled "Electrode Active Material Powder with Size Dependent Composition and Method To Prepare the Same" and duly and legally issued on August 10, 2010. The '877 patent issued from U.S. Patent Application Serial No. 10/584,992 and claims priority to U.S. Patent Application Serial No. 60/533,225 filed on December 31, 2003. The '877 patent will expire December 12, 2027. The '877 patent relates to an electrochemical cell, particularly lithium-ion batteries, using powderous electrode active materials.

46. At the time of issuance, LGC was the owner of the entire right, title, and interest in and to the '877 patent. Prior to issuance, the '877 inventors assigned all right, title, and interest in U.S. Patent Application Serial No. 10/584,992 to LGC. This assignment is recorded at the USPTO at Reel/Frame 018042/0077. The '877 patent is valid, enforceable, and is currently in full force and effect.

47. Pursuant to Rule 210.12(c) of the Commission's Rules of Practice and Procedure, this Complaint is accompanied by Appendices G and H containing: (i) a certified copy and three

additional copies of the prosecution history of the '877 patent; and (ii) four copies of each reference mentioned in that prosecution history, respectively.

### 2. Non-Technical Description of the Patented Invention

48. The '877 patent relates to a powderous electrode active material comprising a lithium transition metal oxide. The '877 patent also relates to an electrochemical cell, particularly those found within a lithium-ion battery, using the powderous electrode active material.

49. Prior to the invention of the '877 patent, commercial rechargeable lithium-ion batteries almost exclusively applied $LiCoO_2$ as a cathode active material. Different mechanisms, however, including precipitation of reaction products, can cause fading of cathode active materials like $LiCoO_2$. Similar to the fading issue, and no less important, other reactions can present significant safety issues for lithium batteries with $LiCoO_2$ as a cathode active material. Delithiated $LiCoO_2$ tends to oxidize electrolyte, which can result in more heat and instability within the material, possibly leading to unsafe conditions. The '877 patent provides for a powderous electrode active material of lithium transition metal oxide $Li_aM_bO_2$. With reference to Fig. 2 (reproduced below), this transition metal oxide includes a combination of larger particles and smaller composition particles that together ensure improved cycling stability and safety.



**'877 Patent at Fig. 2**

### 3. Foreign Counterparts to the '877 Patent

50. The following foreign patent(s) and/or patent application(s) correspond to the '877 patent: CA2552375A1, CA2552375C, CN1902776A, CN1902776B, DE1716609, EP1716609A1, EP1716609A4, EP1716609B1, EP3432392A1, FR1716609, GB1716609, IN244473, IT1716609, JP2007517368A, JP2011091050A, JP4890264B2, JP5384468B2, KR100772829B1, KR20060105039A, NL1716609, PL1716609T3, TW200534525A, TWI254479B, and WO2005064715A1.

51. No other foreign patents or patent applications corresponding to the '877 patent have been filed, abandoned, withdrawn, or rejected.

## VI. UNFAIR ACTS OF PROPOSED RESPONDENTS

52. Upon information and belief, Respondents' Accused Products directly infringe, contributorily infringe, and/or induce the infringement of at least the Asserted Claims (identified above in Section I). Discovery may reveal that Respondents infringe additional claims of the Asserted Patents.

53. On information and belief, SKI manufactures, assembles, packages and tests, and/or purchases the accused batteries, electrochemical devices, and components thereof outside the United States, specifically, at least in South Korea. SKI then sells for importation, imports into, and/or sells within the United States after importation, the Accused Products. On information and belief, SKBA imports into the United States and/or sells within the United States after importation the Accused Products as described in more detail in Section VII.

54. By way of example, Respondents have violated Section 337 by importing, selling for importation, and/or selling in the United States after importation products containing the

infringing SKI cells and/or packs.[2] Claim charts demonstrating how these representative Accused Products infringe the asserted independent claims of the Asserted Claims are attached to the Complaint as Exhibits 10-13. Further discovery may reveal additional infringing lithium-ion battery cells, battery modules, battery packs, components thereof, and products containing the same.

55. On information and belief, Respondents also induce, and continue to induce, infringement of the Asserted Patents with specific intent that these acts infringe the Asserted Patents.

56. Upon information and belief, Respondents had actual notice of the Asserted Patents no later than September 26, 2019, prior to the filing of this Complaint, when LGC filed a complaint for patent infringement against Respondents regarding the Asserted Claims of the Asserted Patents in the United States District Court for the District of Delaware, including claim charts, and provided the complaint materials to SKI.

57. On information and belief, Respondents actively induce others to infringe the Asserted Patents by selling the Accused Products to others who incorporate the Accused Products into third party products for importation and sale in the United States. Additionally, Respondents induce, and continue to induce, infringement of the Asserted Patents by providing materials and instructions for operation of Accused Products, with the specific intent and knowledge that the materials and instructions direct, teach, or assist others to infringe the Asserted Patents.

---

[2] Throughout this Complaint, unless otherwise indicated, "Respondents" refers to one or both of SKI and SKBA. Discovery is expected to reveal the precise roles of the parties with respect to the supply chain of the Accused Products.

58. For example, Respondents have induced infringement of the Asserted Patents by selling and providing lithium-ion cells battery packs to global auto manufacturers without license or authority, for the manufacture of and for the purpose of incorporation into electric-powered vehicles for importation and sale in the United States. For example, Respondents are inducing the infringement of the Asserted Claims by others, including manufacturers, distributors, and customers. Respondents induced such infringing acts and knew or should have known that their actions would induce actual infringement of the Asserted Patents.

59. On information and belief, Respondents also contributorily infringe certain Asserted Claims through their sale and offers to sell within the United States and/or importation into the United States components of the Accused Products, constituting a material part of the Asserted Claims, knowing the same to be especially made or especially adapted for use in an infringement of the Asserted Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. For example, on information and belief, the Accused Products and/or components thereof are specifically designed for use in infringement of the Asserted Claims. Due to their specific designs, the Accused Products and/or components thereof do not have any substantial noninfringing uses.

60. Respondents sell the Accused Products with the knowledge that the devices infringe. On information and belief, Respondents had actual notice of the Asserted Patents and their infringement, as discussed above.

## VII. SPECIFIC INSTANCES OF UNFAIR IMPORTATION AND SALE

61. On information and belief, Respondents have imported into the United States, sold for importation into the United States and/or sold within the United States after importation Accused Products—certain lithium-ion battery cells, battery modules, battery packs, components

thereof, and products containing the same—produced in Korea using, *inter alia*, LGC's proprietary battery technology.

62. On information and belief, the 2019 Kia Niro EV, a crossover utility electric vehicle made in Korea and imported into the United States, contains accused lithium-ion battery cells produced by SKI in South Korea. *See* Exhibits 14-15. Indeed, Kia Niro EV vehicles "use cells from [LGC's] Korean competitor SK Innovation." Exhibit 14. The SKI battery cells in the Kia Niro EV Crossover Utility infringe LGC's proprietary battery technology. Exhibits 10-13.

63. The Kia Niro EV is now on sale and offered for sale in the United States after being imported from Korea. *See* Exhibit 16-17. A Kia dealership in Rockville, Maryland advertises at least six Kia Niro EV EX automobiles offered for sale or lease in the United States. *See* Exhibit 18. Window stickers for the vehicles indicate that they were assembled in Korea, imported into the United States through Philadelphia, and sold to the Kia dealership in Maryland. *See* Exhibit 19.

64. In addition, on information and belief, on or about November 30 to December 9, 2018, a 2019 Kia Niro EV containing SKI's Accused Products was imported into the United States and was demonstrated and displayed at the 2018 LA Auto Show, an annual automotive industry trade show held in Los Angeles, California. *See* Exhibits 20-21.

65. Further, importation records from Panjiva.com indicate that SKI has imported lithium-ion batteries, lithium-ion battery packs, and separators for lithium-ion batteries from South Korea into the United States. *See* Exhibit 22.

66. On information and belief, SKBA also imports or sells after importation accused lithium-ion battery cells, battery modules, battery packs, components thereof, and/or products containing the same. For example, SKI and SKBA have alleged that they have "taken tangible

steps that will lead to" the manufacture of lithium-ion battery cells in Georgia. *See* EDIS Doc. No. 686937, *Certain Pouch-Type Battery Cells, Battery Modules, and Battery Packs, and Prods. Containing Same*, 337-3411, Complaint, ¶¶ 44-45, 47 ("The products . . . are Complainants' pouch-type battery cells, battery modules, and battery packs. . . ."). SKI and SKBA have also admitted that SKBA "currently focuses on the manufacture and sale of battery technology in the United States." *See* EDIS Doc. No. 679282, *Certain Lithium-Ion Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Production and Testing Sys. and Processes Therefor*, 337-TA-1159, Answer, ¶ 25. Moreover, "SK ie technology Co." (an affiliate of SKI) produces separators for lithium-ion batteries abroad. Exhibit 23; *see also* Exhibit 24. On information and belief, imported battery materials such as separators are used in SKBA's "battery technology." On information and belief, the imported battery materials incorporate LGC's patented battery technology.[3] *See, e.g.*, Exhibits 10-13.

## VIII. CLASSIFICATION UNDER THE HARMONIZED TARIFF SCHEDULE

67. The Accused Products are believed to fall within at least the following classifications of the Harmonized Tariff Schedule of the United States: 8507.60, 8507.80, and 8507.90. These classifications are intended for illustration only and are not intended to be restrictive of the Accused Products.

## IX. LICENSEES

68. Pursuant to Commission Rule 210.12(a)(9)(iii), licensees to the Asserted Patents are shown in Confidential Exhibit 36.

---

[3] SKBA was also named as a respondent in *Certain Lithium-Ion Batteries, Battery Cells, Battery Modules, Battery Packs, Components Thereof, and Production and Testing Systems and Processes Therefor*, 337-TA-1159, and the ITC instituted this investigation on May 29, 2019 (EDIS Doc. No. 677297).

## X. DOMESTIC INDUSTRY

69. As required by Section 337(a)(2) and defined by Section 337(a)(3), a domestic industry exists in the United States in connection with articles protected by the '517, '241, '152, and '877 patents.

70. LGC is one of the world's largest lithium-ion battery manufacturers, with significant U.S. market share in both automotive and stationary applications. LGC's wholly-owned subsidiary in the United States plays an instrumental role in both the development and production of articles protected by the Asserted Patents. LGCMI manufactures battery cells incorporating the patented technology at a plant in Holland, Michigan. These battery cells are, in turn, either utilized by LGCMI itself as it manufactures battery packs incorporating the cells, or are sold to LGCMI's customers who manufacture their own battery packs. LGCMI also has a facility in Troy, Michigan, where it engages in research, development, customer support, and warranty work with respect to the battery management system that is combined with the cells to make a safe and commercially viable automotive battery pack. LGC, and through its subsidiary LGCMI, has invested, and continues to invest substantial resources in the United States geared to producing products that incorporate the patented technology and providing these products to U.S. industries.

### A. Technical Prong

71. Claim charts demonstrating how Complainants' representative lithium-ion batteries are covered by an exemplary claim of each of the Asserted Patents are attached as Confidential Exhibits 26-29. Therefore, these lithium-ion battery cells and/or packs containing them are protected by the '517, '241, '152, and '877 patents, and a domestic industry for those articles exists.

**B. Economic Prong**

72. A domestic industry, under subparts (A), (B), and/or (C) of Section 337(a)(3), exists by virtue of LGCMI's significant U.S. investment in plant and equipment, significant employment of U.S. labor and capital, and substantial investment in U.S. exploitation of the Asserted Patents, including through production, engineering, research and development, warranty, customer support, and other activities designed to exploit the patented technology. LGCMI's U.S. investments related to the articles protected by the Asserted Patents are discussed in more detail in the Confidential Declaration of Mr. Jaewook Jung, Treasurer of LGCMI. *See* Confidential Exhibit 25.



73. LGC, through its subsidiary LGCMI, has made and continues to make significant investment in plant and equipment, a significant employment of labor and capital, and substantial investment in exploitation, in the United States with respect to articles protected by the Asserted Patents. LGC and LGCMI have made and continue to make substantial investment in facilities in Holland, Michigan (pictured above) and Troy, Michigan, where hundreds of skilled workers and staff are employed. These facilities are located in the heart of the United States automotive

industry and enable LGCMI to work closely with U.S. automobile manufacturers who increasingly are using battery cells with SRS technology and cathode active material powder with size dependent composition in automotive applications. *See* Confidential Exhibit 25.[4]

## XI. RELATED LITIGATION

74. On April 29, 2019, LGC and LGCMI filed a complaint in the United States International Trade Commission (Inv. No. 337-TA-1159) against SKI and SKBA alleging misappropriation of Trade Secrets owned by LGC.

75. On April 29, 2019, LGC and LGCMI filed a complaint in the United States District Court for the District of Delaware against Respondents alleging misappropriation of Trade Secrets owned by LGC.

76. On September 3, 2019, SKI filed a complaint in the United States District Court for the District of Delaware against LGC, LGCMI, and LG Electronics, Inc. alleging infringement of U.S. Patent No. 9,698,398.

77. On September 3, 2019, SKI filed a complaint in the United States District Court for the District of Delaware against LGC and LGCMI alleging infringement of U.S. Patent No. 10,121,994.

78. On September 3, 2019, SKI and SKBA filed a complaint in the United States International Trade Commission (Dkt. No. 3411) against LGC and LGCMI alleging infringement of U.S. Patent No. 10,121,994.

---

[4] In addition, in *Certain Batteries and Electrochemical Devices Containing Composite Separators, Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1087, the ALJ granted Complainants' motion for partial summary determination as to the economic prong of the domestic industry requirement. *See* EDIS Doc. No. 652457 (Aug. 8, 2018). Specifically, the ALJ found that Complainants satisfied the economic prong of the domestic industry requirement under Sections 337(a)(3)(A) and 337(a)(3)(B). *Id.* at 11-13. Complainants' domestic investments have only increased since that investigation.

79. On September 26, 2019, LGC and Toray filed a complaint in the United States District Court for the District of Delaware against Respondents alleging infringement of, *inter alia*, the Asserted Patents.

80. The '517, '241, and/or '152 patents were also the subject of the following additional proceedings:

(a) *Ube Maxell Co., Ltd. v. LG Chem, Ltd.*, No. IPR2013-00470 (P.T.A.B.) (*inter partes* review of the '152 patent, which terminated as a result of the PTAB's decision not to institute);

(b) *Certain Batteries and Electrochemical Devices Containing Composite Separators, Components Thereof, and Products Containing Same*, Inv. No. 337-TA-1087 (U.S.I.T.C.) (ITC Investigation involving the '517, '241, and '152 patents, which terminated as a result of settlement);

(c) *Amperex Technology Limited, SZ DJI Technology Co., Ltd. DJI Technology, Inc. v. United States International Trade Commission*, Dkt. No. 19-1204 (Fed. Cir.) (appeal of initial determination regarding the economic prong of the domestic industry requirement regarding the '517, '241, and '152 patents, which terminated as a result of settlement); and

(d) *Amperex Technology Limited v. LG Chem, Ltd. and Toray Industries*, Inc., No. IPR2018-00783 (P.T.A.B.) (*inter partes* review of the '241 patent, which terminated as a result of settlement).

81. Other than the litigations specified above, to Complainants' knowledge, the alleged unfair methods of competition and unfair acts, or the subject matter thereof, are not, and have not been, the subject of any court or agency litigation.

## XII. REQUESTED RELIEF

82. WHEREFORE, by reason of the foregoing, Complainants request that the United States International Trade Commission:

(a) Institute an immediate investigation, pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337, with respect to violations of Section 337 based on Respondents' unlawful importation into the United States, sale for importation into the United States, and/or sale within the United States after importation of certain lithium-ion battery cells, battery modules, battery packs, components thereof, and products containing the same, that infringe one or more claims of United States Patent Nos. 7,662,517; 7,638,241; 7,709,152; and 7,771,877;

(b) Schedule and conduct a hearing on the unlawful acts and, following the hearing, determine that there has been a violation of Section 337;

(c) Issue a permanent limited exclusion order, pursuant to Section 337(d) of the Tariff Act of 1930, as amended, excluding from entry into the United States all of Respondents' certain lithium-ion battery cells, battery modules, battery packs, components thereof, and products containing the same, that infringe one or more claims of United States Patent Nos. 7,662,517; 7,638,241; 7,709,152; and 7,771,877;

(d) Issue permanent cease and desist orders, pursuant to Section 337(f) of the Tariff Act of 1930, as amended, directing each Respondent to cease and desist from the importation, marketing, advertising, demonstrating, warehousing inventory for distribution, sale and use of certain lithium-ion battery cells, battery modules, battery packs, components thereof, and products containing the same, that infringe one or more claims of United States Patent Nos. 7,662,517; 7,638,241; 7,709,152; and 7,771,877;

(e) Impose a bond upon each Respondent to the extent it continues to import infringing articles during the 60-day-Presidential review period per 19 U.S.C. § 1337(j); and

(f) Grant such other and further relief as the Commission deems just and proper based on the facts determined by the investigation and the authority of the Commission.

Respectfully submitted,

Dated: September 26, 2019

Michael J. McKeon
Lauren A. Degnan
Timothy W. Riffe
Ralph A. Phillips
Daniel A. Tishman
Thomas S. Fusco
**FISH & RICHARDSON P.C.**
1000 Maine Ave., SW
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Leeron G. Kalay
**FISH & RICHARDSON P.C.**
500 Arguello St., Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070

## VERIFICATION OF COMPLAINT

I, Nicholas Kassanos, declare, in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1. I am President of Complainant LG Chem Michigan Inc., and I am duly authorized to sign this Complaint on behalf of Complainants;

2. I have read the foregoing Complaint;

3. To the best of my knowledge, information, and belief, based upon reasonable inquiry, the foregoing Complaint is well-founded in fact and is warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

4. The allegations or other factual contentions have evidentiary support or are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

5. The foregoing Complaint is not being filed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

SEP 25 2019

Nicholas Kassanos
PRESIDENT LG CHEM MI INC.